STEPHEN BARNHART *v.* STATE OF INDIANA.

[No. 1-573A81. Filed December 5, 1973.]

*John C. Kite, Beecher and Kite,* of Terre Haute, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

LYBROOK, J.—Defendant-appellant (Barnhart) was convicted by a jury under both counts of an affidavit charging Reckless Driving and Reckless Homicide. He was sentenced to 90 days and fined $250 on the former charge and received a sentence of not less than one year nor more than five years on the Reckless Homicide Count.

From his overruled Motion to Correct Errors, Barnhart appeals, presenting four issues for review.

(1) Whether the court erred in overruling defendant's motion for directed verdict at the close of the State's case in chief.

(2) Whether there was sufficient evidence to sustain convictions for Reckless Driving and Reckless Homicide.

(3) Whether the court abused its discretion by not granting defendant a suspended sentence.

(4) Whether the court erred in giving State's Instruction No. 4.

The evidence most favorable to the State shows that on April 9, 1972, Barnhart was driving his motor vehicle north on U.S. Highway 41 just north of Rockville. While travelling at a high rate of speed, he attempted to pass three slow moving vehicles (also going north) as they were proceeding up a hill. The area was marked as a "no passing zone" with a yellow line on the paved portion of the highway. As Barnhart neared the crest of the hill, another vehicle, southbound, came over the crest approaching Barnhart's car. Each driver swerved to the west berm in an apparent attempt to avoid the other, then back to paved portion where they collided

head-on, resulting in the death of a passenger in the south-bound car.

## ISSUES 1 and 2.

Under these two issues Barnhart presents kindred arguments claiming insufficiency of the evidence to sustain the verdicts. We shall proceed to discuss these issues together.

Although Barnhart later admitted that he was the driver of the Camaro automobile involved in the fatal collision, he initially contended at the close of State's case in chief, that the evidence was wholly circumstantial and insufficient to show that he was in fact the driver. This contention must completely fail.

Sheriff Cooper testified that he helped Barnhart out of the car at the scene after the collision. Marion Reisinger testified that he was an eyewitness and saw the two cars collide head-on. He went to the Camaro automobile first and had a converstion with Barnhart, whom he referred to as the driver. He later assisted Barnhart by unbuckling his seat belt and shoulder harness. At the trial he identified Barnhart as "the one driving the Camaro".

From the above evidence, the trier of fact could infer beyond a reasonable doubt that Barnhart was in fact the driver of the Camaro at the time of the collision.

Appellant next argues that since the southbound car in which the decedent was riding, swerved toward its right shoulder and then back into the path of the oncoming Camaro, there is insufficient proof of the proximate cause of the collision. The State maintains a contrary position contending that Barnhart was not in his proper lane and this caused the southbound vehicle to attempt to swerve both off and then back on the road in an attempt to avoid a collision.

This contention was resolved in a recent case involving similar facts. In *Napier* v. *State* (1971), 255 Ind. 638, 266

N.E.2d 199, the Supreme Court faced with a similar argument said:

> "Mr. Schuette was proceeding south on the highway in a lawful manner driving in the correct lane. As he came over a small rise in the highway he was suddenly confronted with appellant's vehicle meeting him head on in his lane of traffic. Faced with that circumstance it was entirely reasonable for Mr. Schuette to use any means at his disposal to attempt to avoid a collision. Although it was quite natural for the appellant to also attempt to avoid the collision by driving onto the berm of the road, it was the appellant, not Mr. Schuette, who had created the unexpected situation which placed two rapidly moving vehicles on a collision course in the highway. The jury was fully justified in finding from these facts that the appellant was guilty of failure to yield the right of way to an oncoming vehicle.
>
> *   *   *
>
> "This Court held in the case of Seibert v. State (1959), 239 Ind. 283, 156 N.E.2d 878, that the mere fact a driver was passing another vehicle on a two lane road as he approached the crest of a hill did not in and of itself establish a deliberate violation of the statute. It was pointed out in the *Seibert* case that the hill in question was 'a fooler' and that the appearance of the highway at that point could lead a driver to believe that he was in fact seeing the entire road ahead when as a matter of fact an oncoming car might be concealed in a depression in the road, which was not evident. The Court further pointed out that there was no sign or any yellow line warning persons of the obstructed view ahead. However, in the case at bar the facts above recited were sufficient for the jury to find that the appellant had consciously chosen to cross a yellow line to pass other vehicles; that his voluntary act exceeded mere negligence and the fact that his deliberate, unlawful act resulted in the death of another person constituted manslaughter."

Appellant's contention that his actions could not be the proximate cause of the collision and death lacks substance.

Barnhart further advances the proposition that the mere fact that his car was passing illegally proves only a traffic violation and fails to conclusively prove the offense of reckless homicide.

Barnhart cites *Matthew* v. *State* (1972), 154 Ind. App. 182, 289 N.E.2d 336 and *DeVaney* v. *State* (1972), 259 Ind. 483, 288 N.E.2d 732. Each of these cases can be distinguished on their facts from the case at bar.

Barnhart was observed driving his car at a high rate of speed up a blind hill on his wrong side of the road in an attempt to pass three other vehicles in a clearly marked no passing zone. This evidence was ample for the jury to draw an inference that Barnhart's intentional act amounted to a reckless disregard for the safety of others.

On cross-examination of Barnhart the following questions and answers appear in the record:

"Q. Was there room enough for you to get in between these three automobiles that you were passing?
A. No, sir.
Q. You knew that when you started to pass them, didn't you?
A. Yes, sir.
Q. So you took the gamble?
A. Yes, sir."

Barnhart's conduct clearly brought him within the scope of both the reckless driving and reckless homicide statutes.

## ISSUE 3.

Appellant next contends that the trial court abused its discretion by failing to follow the standards set up in IC 1971, 35-7-1-1, Ind. Ann. Stat. § 9-2209 (Burns 1956 Repl.) which read as follows at the time of the offense:

"The several circuit and criminal courts and the city and municipal courts in the cities of the first and second class of this state, shall have power, in any case where any person shall have been convicted of a felony or misdemeanor, or shall have entered his plea of guilty to a charge of a felony or misdemeanor, upon the entry of judgment of conviction of such person, to suspend such sentence and parole such person, by an order of such court, duly entered of record as a part of the judgment of the court in such

case, except the crimes of murder, arson, burglary, rape, treason, kidnapping, and a second conviction of robbery, *whenever such court, in the exercise of its judgment and discretion,* shall find and determine that such person has committed the offense for which he or she has been convicted under such circumstances as that, *in the judgment of such court, such person should not suffer the penalty imposed by the law for such offense* if he or she shall thereafter behave well, or whenever such court shall find and determine that by reason of the character of such person, or the facts and circumstances of such case, the interest of society does not demand or require that such person shall suffer the penalty imposed by law if he or she shall thereafter behave well . . ." (Emphasis added.)

Barnhart argues that his actions were not aggravated but that rather they constituted recklessness "in its most minimal degree." He seems to assume that the standards contained in the above action are in the nature of vested statutory rights of the defendant. Barnhart further asserts that the above section was enacted to avoid "the vindictive justice" prohibited by Article I, Sec. 18, Constitution of Indiana.

Appellant further takes exception to certain remarks of the trial judge at sentencing which appear in the record and read as follows:

"I am forever and ever amazed that people will take life into their hands as cheaply as they do. You are not different from many others. You see it everyday on the highways that somebody is going to pass everybody on the road, boys are going to race, they are going to have these hot cars, and as a result we kill more people in the United States with automobiles than have been killed in war and nobody makes any hue and cry about that."

In our opinion appellant has no vested right to suspended sentence and probation under the statute. Neither do we find any impropriety in the above remarks of the trial court.

The language of the statute, particularly the parts above emphasized, make it plain that the granting of a suspended sentence and probation rests solely in the sound discretion of the trial judge.

In *Farmer* v. *State* (1971), 257 Ind. 511, 275 N.E.2d 783, our Supreme Court said:

"Finally, appellant alleges that the trial court abused its discretion in denying the appellant probation. The granting of probation to a defendant, who is found guilty of a crime is wholly discretionary power of the trial court. Burns Ind. Stat. Ann. (1956 Repl.) sec. 9-2209, IC 1971, 35-7-1-1. In this case, the trial judge stated that he felt under the circumstances probation should be denied. Probation is purely a favor granted by the trial judge and there is no right to probation. We find no evidence in either appellant's brief or the record of this case which could constitute a showing of abuse of discretion on the part of the trial court. Without such a finding, this court will not reverse the decision of the trial judge."

We find nothing in the record suggesting an abuse of discretion on the part of the trial judge in the case at bar.

## ISSUE 4.

Finally appellant contends that the court erred in giving State's Instruction No. 4, which read as follows:

"The Court instructs you that the law of the State of Indiana provides that there can be no crime without an intent and this law applies in this case. However, it is also the law of the State of Indiana applicable to this case that if a person is engaged in the voluntary commission of an unlawful act he will be presumed to have intended the natural and probable consequences of his unlawful and reckless act."

Barnhart's objection is that the above instruction seems to apply to involuntary manslaughter rather than the offenses of reckless driving or reckless homicide and further that it implies that intent may be imputed from the commission of a traffic offense. We disagree with this constructon. The instruction expresses the established rule that intent may be presumed from the defendant's acts.

Finding no error in the trial proceedings, the judgment is affirmed.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 304 N.E.2d 316.