STATE OF INDIANA EX REL. RAYMOND C. SUFANA, PROSECUTING ATTORNEY FOR THE 31ST JUDICIAL CIRCUIT *v.* SUPERIOR COURT OF LAKE COUNTY AND THE HONORABLE JAMES J. RICHARDS, JUDGE OF COURT ROOM FIVE OF CIVIL DIVISION AND THE HONORABLE JAMES E. LETSINGER, JUDGE OF COURT ROOM TWO OF CRIMINAL DIVISION.

[No. 678S124. Filed October 18, 1978. Rehearing denied January 16, 1979.]

*Raymond C. Sufana,* Prosecuting Attorney, *Michael M. Greener, John W. Blood,* Deputy Prosecuting Attorneys, for relator.

*Max Cohen,* of Merrillville, for respondents.

PIVARNIK, J.—This is an original action by which relator, State of Indiana sought an alternative writ of mandamus and a temporary writ of prohibition. We granted this temporary writ, directing respondent Judge Richards to refrain from exercising further jurisdiction over this cause, and to nullify his former orders in this cause which suspended the sentence of convicted defendant David Gubitz. *State ex rel. Sufana* v. *Superior Court of Lake County,* (June 29, 1978). At the same time we ordered respondents to show cause why the temporary writ of prohibition should not be made permanent and why the alternative writ of mandamus should not be made absolute. The parties have since responded and fully briefed the issues.

The sole issue is whether or not the respondent judge, who was not the trial judge but rather one who qualified specially to hear a petition for post-conviction relief, thereby had the authority to grant a petition for "shock probation."

This cause involves a criminal prosecution by the State of Indiana against David Gubitz. Gubitz, along with one Larry McCraney, was charged in the Lake Superior Court Criminal Division under cause number CR 73-657, by way of information in Count I, with conspiracy to commit a felony, to-wit, theft auto, and in Count II with theft over $100. The cause was assigned to Criminal Court Room 2, Judge James E. Letsinger presiding, and after a trial by jury both defendants were found guilty of both counts as charged. On July 1, 1974, Judge Letsinger sentenced defendant David Gubitz to serve not less than two nor more than fourteen years on Count I, and not less than one nor more than ten years on Count II. Defendant Gubitz posted an appeal bond and filed a motion to correct errors. On December 20, 1974, Judge Letsinger denied the motion to correct errors as to defendant David Gubitz. Subsequently, the Indiana Court of Appeals affirmed the judgment of the trial court in all respects. Petition for

rehearing was denied by the Court of Appeals and a petition for transfer was denied by the Supreme Court of Indiana. *Gubitz* v. *State,* (1977) Ind. App., 360 N.E.2d 259, *trans. denied.*

Following denial of transfer, Judge Letsinger on August 30, 1977, set the cause for execution of sentence, as to defendant David Gubitz, for September 9, 1977. However, on August 5, 1977, petitioner David Gubitz had filed a petition for post-conviction relief to vacate the conviction and sentence pursuant to Ind. R. P. C. 1 of the Indiana Rules of Court. The post-conviction motion was docketed by the Clerk in the same cause number, CR #73-657. Pursuant to Ind. R. P. C. 1, § 4(b), a change of venue was requested by Gubitz which was granted by Judge Letsinger on the same day. Judge Letsinger named three judges to serve as a panel for the post-conviction hearing, among whom was James J. Richards. The parties then struck, leaving Judge Richards as their selection for Special Judge, and he subsequently qualified and assumed jurisdiction in the cause. Since Gubitz's post-conviction petition requested that his sentence and conviction be vacated, Judge Richards granted a stay of execution of sentence of defendant pending determination of the post-conviction relief questions. After hearing evidence in the post-conviction hearing, Judge Richards on February 8, 1978, denied the motion to vacate conviction and sentence of Gubitz, and further filed an Order of Commitment. On February 15, 1978, defendant Gubitz commenced serving his sentence.

On March 13, 1978, defendant Gubitz filed a petition for consideration for "shock probation" before Judge Richards. Judge Richards set the matter for hearing on March 30, 1978. On that date the State of Indiana orally objected to Judge Richards' jurisdiction to hear a petition for shock probation. Judge Richards overruled the state's objections, and granted Gubitz's petition for shock probation.

A post-conviction action under Ind. R. P. C. 1 is a special remedy designed for presentation of error of the court for various reasons which were not available or known at the time of the original trial or appeal. We are not here concerned with Ind. R. P. C. 2, which is a provision for a belated appeal and is an extension of the original trial. An Ind. R. P. C. 1 hearing is a quasi-civil hearing totally separate and distinct from the original criminal trial. The complainant bears the burden of proving his right to relief by preponderance of the evidence. *Johnson* v. *State,* (1974) 262 Ind. 183, 313 N.E.2d 542; *Lockhart* v. *State,* (1971) 257 Ind. 349, 274 N.E.2d 523; *Henry* v. *State,* (1976) 170 Ind. App. 463, 353 N.E.2d 482; *Baynard* v. *State,* (1974) 162 Ind. App. 86, 317 N.E.2d 897; *Harrison* v. *State,* (1973) 155 Ind. App. 231, 292 N.E.2d 612.

The rule provides that the proceeding under Ind. R. P. C. 1 is commenced by the filing of the petition, provides for the manner in which the action will be pleaded as well as the manner in which it will be answered by the State of Indiana, provides for a right in the petitioner for a change of venue from the judge, and provides for an appeal from the final judgment in the proceeding under rules applicable to civil actions. The Ind. R. P. C. 1 action is obviously then, by its very nature, an action brought after final judgment has been entered in the original cause, when either rulings have been entered by one or both of the appellate courts, or when time for such appeals has passed. It is thus clear that a special judge appointed under Ind. R. P. C. 1 takes jurisdiction only pursuant to § 4(b) of that rule, and does not become a special judge for all matters in the cause. The right to change of venue in the original cause is covered by Ind. R. Crim. P. 12 of our rules of criminal procedure, which provides that a defendant shall have one change from the judge which shall be applied for by filing within ten days after a plea of not guilty. In the present case, then, there was no right or occasion for the defendant

Gubitz to have a change of venue from the judge at this point other than pursuant to the special provision of Ind. R. P. C. 1, § 4(b).

However, it is contended by the respondent that the Lake Superior Court is a multi-judge court, *see* Ind. Code § 33-5-29.5-19, 20 (Burns 1975), and that Judge Richards thus had the authority to hear and rule on the Motion for Shock Probation, even if he was not the Special Judge in this cause. It is also claimed that since Judge Richards is the Chief Judge of the Lake Superior Court, he has authority in this case on that basis. We will now deal separately with these two special claims for Judge Richards' purported authority.

The portion of the probation statute with which we are here concerned is Ind. Code § 35-7-1-1 (Burns 1975). This statute states in relevant part as follows:

*"Power to suspend sentence and place defendants on probation—Probation clerk.*—The several circuit and criminal courts and the city and municipal courts in the cities of the first and second class of this state, shall have power, in any case where any person shall have been convicted of a felony or misdemeanor, or shall have entered his plea of guilty to a charge of a felony or misdemeanor, upon the entry of judgment of conviction of such person, to suspend such sentence and parole such person, by an order of such court, duly entered of record as a part of the judgment of the court in such case, except the crimes of murder, arson, first degree burglary, rape, treason, kidnapping, and a second conviction for robbery, whenever such court, in the exercise of its judgment and discretion, shall find and determine that such person has committed the offense for which he or she has been convicted under such circumstances as that, in the judgment of such court, such person should not suffer the penalty imposed by the law for such offense if he or she shall thereafter behave well, or whenever such court shall find and determine that by reason of the character of such person, or the facts and circumstances of such case, the interest of society does not demand or require that such person shall suffer the penalty imposed by law if he or she shall thereafter behave well. Provided, that on its own motion the court may, in open court and after notice to the prosecuting attorney and after review of the diagnostic report by the department of corrections,

suspend the further execution of the sentence at any time without six [6] months after the defendant shall have commenced to serve his sentence of imprisonment . . ."

It is true that this statute uses the language "court" rather than "trial judge," but it is apparent, and it has been held, that it is the trial judge who makes this decision. The above statute provides that the order of probation will be entered *upon the entry of judgment of conviction of such person,* and that it will be duly entered of record *as a part of the judgment of the court in such case.* In this case, Judge Letsinger had already entered judgment finding the defendant guilty and sentencing him under both counts. He made no provision in said judgment for probation and so had already passed on that consideration. It only remained to execute the judgment, which execution was stayed until defendant Gubitz's convictions could be appealed to the Court of Appeals and the Supreme Court. Judge Letsinger had set the date of September 9, 1977, to execute the sentences following the completion of those appeals. As the record discloses above, there were further temporary suspensions so that the post-conviction petition could be heard and ruled on.

It has been held by this court that a defendant has no right to probation under this statute, since the giving of probation is a discretionary matter in the court and a matter of grace. It is in the sole discretion of the trial judge to grant probation and set out the terms thereof, and only where he has abused that discretion can it be set aside on appeal. *Downs* v. *State,* (1977) 267 Ind. 342, 369 N.E.2d 1079; *Farmer* v. *State,* (1971) 257 Ind. 511, 275 N.E.2d 783; *Barnhart* v. *State,* (1973) 158 Ind. App. 636, 304 N.E.2d 316; *Fortner* v. *State,* (1973) 148 Ind. App. 17, 301 N.E.2d 522. The "shock probation" proviso is a new section in the statute added in 1972, which gives authority to the trial judge to consider probation a second time and *on his own motion.* There is no provision for a right existing in the defendant to have a hearing on this provision, nor is

the court required in any way to dispose of that provision in any order. It provides that the court may, in its own discretion, decide to recall the defendant and put him on probation after he has served a period of up to six months. Prior to this proviso in the statute, the court had no authority to change the sentence of the defendant after he had started to serve his time. *State ex rel. Steers, Attorney General v. Criminal Court of Lake County, et al.*, (1953) 232 Ind. 443, 112 N.E.2d 445. It was clearly the intention of the legislature in amending the statute in 1972, to give discretion to the trial judge to change his original commitment order to one of suspension of sentence and probationary consideration, after seeing the diagnostic report from the state diagnostic center. Such discretion, in the case at hand, did not rest in either the Ind. R. P. C. 1 Special Judge nor any of the other judges of the multi-judge Lake County Superior Court. This is apparent in the statute in that it provides that the authority of the trial judge to suspend sentence will be based on his consideration of: (1) the circumstances under which the crime was committed; (2) the facts and circumstances of the case, and; (3) the character of the accused. All of these things will be in the knowledge of the trial judge from his trial of the case and the reading of the pre-sentence investigation report that is filed by the probation officer.

We turn now to the claim that Judge Richards derives his authority in this case from the fact that he is Chief Judge of the Lake Superior Court. This issue has been raised by the parties and expanded in the supplemental filings since the issuance of our temporary writ, and this court therefore feels obliged to respond to the claim. Following the temporary writ of prohibition and alternative writ of mandate entered by this court on June 29, 1978, the defendant, David Gubitz, filed a petition before Judge Richards as Chief Judge of the Superior Court of Lake County. Defendant requested that this case be reassigned from Judge Letsinger, in that it was alleged that Judge Letsinger had now become prejudiced in

this case and could not properly rule on shock probation. The reason for this was that during the post-conviction hearing before Special Judge Richards, Judge Letsinger was called by the state as a witness and had thereby disqualified himself to act any further in the Gubitz matter. On July 3, 1978, Chief Judge Richards found in favor of this petition and transferred the cause to himself pursuant to his powers as Chief Judge of the Lake Superior Court. He interpreted the writs ordered by this court to be directed to him only as Special Judge, and not as Chief Judge of the Lake Superior Court, and therefore felt he had the authority to act in the latter capacity. On September 11, 1978, Judge Richards reinstated the shock probation order previously entered on March 30, 1978, on petition of defendant Gubitz, and asked that this court modify its June 29 order in compliance with his interpretation of it. Judge Richards thus asks us to provide that our writ operates only to order him as Special Judge not to act in this case and in no way affects his exercise of jurisdiction as Superior Court Judge of Room 5, in Hammond, or as Chief Judge of the Lake Superior Court.

The new order of Judge Richards recites the authority of the Chief Judge to act under the enabling statute of the Superior Court of Lake County. Ind. Code § 33-5-29.5-19 (Burns 1975), which provides in part:

"The chief judge shall be responsible for the operation and conduct of the court and to see that the court shall officially and judicially operate. The chief judge may assign judges of the court from one division to another when necessary for the efficient operation of the court. . . ."

A local rule of the Lake Superior Court is also relied upon by Judge Richards. This rule provides as follows:

"As of the effective date of this rule jurisdiction over criminal cases shall be apportioned on a single assignment basis. That is, each case filed in the criminal division shall be assigned to a specific court as herein provided as soon as such case is filed and jurisdiction shall be retained by that court until final disposition or reassignment. All questions including all motions, shall be considered and deter-

mined only by the judge of said court. All entries including dismissal entries shall be presented to and signed only by the judge of the court where the case is filed. Nothing herein shall prevent the transfer of cases from one court to another within the division with the concurrence of the presiding judges involved."

However, the two above provisions must be read in light of another part of the enabling statute creating the Superior Court of Lake County, Ind. Code § 35-5-29.5-6 (Burns 1975), which provides in part that:

"The court shall have full power and authority to make and adopt rules and regulations for conducting the business of the court, *not repugnant to the laws of this state, and the rules of the Supreme Court of Indiana. . . .*" (emphasis added).

Also, Ind. Code § 33-5-29.5-16 (Burns 1975) provides in part:

"That a change of venue from the judge shall be granted pursuant to and in the manner provided by statute and rules of the Supreme Court for the circuit courts of Indiana, except that no person other than a judge of the superior court of Lake County may serve as a special judge when a change of judge is requested from the superior court of Lake County."

Judge Letsinger, as one of the respondents in this cause, filed a petition with this court stating that he is the Presiding Judge of Room 2, Criminal Division of Lake Superior Court, that he was in jurisdiction of this cause, and that he was not incapacitated in any manner from hearing any issue that might be pending before him. He petitioned this Court to find that Judge Richards had no authority to enter a shock probation order in any capacity either as Special Judge, regular Judge of Room 5, in Hammond, Indiana, or as Chief Judge of the Lake Superior Court. Respondent Judge Richards has filed a Motion to Dismiss, or in the Alternative to Deny, said petition of Judge James Letsinger. Also, relator Raymond Sufana has removed his objection in the trial court to the action of Chief Judge Richards in his transfer of the case to himself, and in the

granting of the shock probation. When we examine the facts herein set out and the statutes above cited, we cannot escape from the fact that these new ingredients added into the conflict change nothing. Ind. R. Tr. P. 79 provides for the procedure to be followed when a question of disqualification comes before the court, or one which might be before him. However, the question of whether or not Judge Letsinger was or should have been disqualified from serving in this case is not before us. As the above paragraphs of this opinion point out, defendant Gubitz had no right under the law to a change of judge after judgment had already been entered in his case, and the only issue remaining was whether or not the trial judge should or should not entertain action on his own motion to grant shock probation. None of the laws set out above can be interpreted to mean that this defendant has a right over and above all others to a remedy that was not contemplated in the law. We can therefore come to no other conclusion but that Judge Richards had no jurisdiction to grant shock probation either as Special Judge in the post-conviction hearing, as a regular Judge in Room 5 of Hammond, or a Chief Judge of the Lake Superior Court. Our writ of prohibition and alternative writ of mandate is directed toward all of said designations of the Honorable Judge Richards.

Finally, it cannot be said that Judge Richards had become a *de facto* judge and that the state had waived its right to object to his considering shock probation, inasmuch as the state did not object when he entered both the stay order earlier and the commitment order following the post-conviction hearing. These were orders Judge Richards made to keep the defendant in the jurisdiction while he heard the post-conviction motion that was before him as Special Judge and he followed through by issuing a commitment order following his decision denying said motion. Judge Letsinger should properly have signed the commitment order, but since

it was perfunctory in nature it would not alert the state to feel any waivers were involved by a failure to object to it.

The temporary writ is made permanent, and the alternative writ is made absolute.

Givan, C.J., Prentice, J., concur; DeBruler, J., dissents with opinion in which Hunter, J., concurs.

### DISSENTING OPINION

DeBruler, J.—The statute creating the Superior Court of Lake County as a multi-judge court, Ind. Code § 33-5-29.5-19, provides in part as follows:

> "The chief judge shall be responsible for the operation and conduct of the court and to seeing that the court shall efficiently and judicially operate. . . . The chief judge may authorize a judge in one division to hear a case originating in another division where necessary for the efficient operation of the court."

Individual judges of the court acquire jurisdiction over the particular case through an assignment process. Each judge of the court has general subject-matter jurisdiction over cases properly commenced in the court. In the statutory provision quoted above, the Legislature has reposed the ultimate responsibility in the Chief Judge to see to it that the judicial business of the court is handled promptly and efficiently. The Chief Judge, presently Judge Richards, is the foreperson of the court. The buck stops on his desk.

The decision as to whether one judge or another should be vested with jurisdiction over a particular matter is a local court administrative matter to be determined in that court with a view toward current practical considerations and fundamental fairness to the litigants. That decision, however it is made, should be subject to successful jurisdictional attack at this level upon the single ground that the judge receiving the case was disqualified. This Court could not possibly undertake a general superintendence of the assignment process of multi-judge trial courts in original actions.

In the case at bar, Chief Judge Richards did not enter a formal order assigning himself the shock probation petition. He should have done so. His judicial actions in taking the shock probation petition and promptly deciding it under the circumstances of this case amply support the conclusion that he was in fact assigning the case to himself under his statutory authority as Chief Judge. He did so in the immediate aftermath of having decided the Gubitz post-conviction petition and signing the order committing Gubitz to prison. He did so after Judge Letsinger had testified in the Gubitz post-conviction hearing and when in his opinion he was as familiar with the crime and character of Gubitz as was Judge Letsinger. In my opinion the omission by Judge Richards of a formal assignment order was a mere irregularity and should not under these circumstances be permitted to have an effect upon his jurisdiction over the case.

The majority construes the suspension of sentence and shock probation statute as impliedly limiting the jurisdiction to sentencing judges to grant shock probation. I do not agree that it has this high degree of restrictive force. There is at the outset no express language to this effect. Moreover, it is typical for rules and statutes of this type to require "the court" to take a particular series of related steps. For example, Ind. R. Tr. P. 16, requires "the court" to order a pre-trial conference upon motion of a party. The resulting pre-trial order is exquisitely related to the trial to follow. Yet no implication arises from the rule that in order for the judge to have jurisdiction of the trial, he must have conducted the pre-trial conference. As I read the shock probation statute, the language expresses a strong legislative preference for the exercise of authority granted in it by the sentencing judge, and nothing more. Holding this view of the statute, I can only conclude that the relator has failed to carry its burden of demonstrating that Chief Judge Richards was disqualified to act upon the shock probation petition, and that

the temporary writ should be dissolved and the permanent one denied.

Hunter, J., concurs.

NOTE.—Reported at 381 N.E.2d 475.